IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEFFREY D. LANHAM,

No. 03:14-cv-01923-HZ

Plaintiff,

v.

OPINION & ORDER

PILOT TRAVEL CENTERS, LLC,
a Delaware limited liability company,
and DOES 1 through 5, inclusive,

Defendants.

Laura L. Chock
LAURA CHOCK PC
1400 S.W. Montgomery St.
Portland, Oregon 97201

        Attorney for Plaintiff

/ / /

/ / /

/ / /

Kyle D. Sciuchetti
Matthew C. Casey
BULLIVANT HOUSER BAILEY PC
300 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR 97204-2089

Attorneys for Defendant

HERNANDEZ, District Judge:

Plaintiff Jeffrey Lanham brings this personal injury action against Defendant Pilot Travel Centers, LLC, and Does 1 through 5. Defendant Pilot Travel Centers moves to dismiss Plaintiff's claims for lack of personal jurisdiction. I grant the motion because I agree with Pilot that the exercise of general jurisdiction over Pilot does not comport with due process and I reject Plaintiff's argument that Pilot consented to jurisdiction in Oregon by complying with Oregon statutes governing foreign business entities.

BACKGROUND

Pilot is a Delaware limited liability company operating approximately 550 interstate travel centers across the United States and Canada. Nichols Apr. 23, 2015 Decl. at ¶ 5. On November 8, 2012, Plaintiff, an Oregon resident and professional truck driver, sustained serious injuries at one of Pilot's locations in Mountain Home, Idaho when he tripped over a chunk of concrete and fell. Compl. at ¶¶ 6-7, 11. Plaintiff brings claims for premises liability and negligence for the injuries he suffered in that fall. Compl. at ¶¶ 8-15.

Pilot's principal place of business is Knoxville, Tennessee. Nichols Apr. 23, 2015 Decl. at ¶ 4. It is registered to do business in Oregon and has an agent for service of process in Oregon. Id. Pilot owns real property and has ten travel centers located in Oregon. Id. at ¶ 5. As of May

2015, Pilot employed 521 employees in Oregon. Nichols June 8, 2015 Decl. (Ex. 1 to June 29, 2015 Chock Decl.) at ¶ 5. It has no regional headquarters or operations center in Oregon. Pilot has never earned more than 2% of its total revenue in Oregon. Nichols Apr. 23, 2015 Decl. at ¶ 6. Pilot earned approximately 1.23% of its total revenue in Oregon in 2013, and 1.32% of its total revenue in Oregon in 2014. Id. Its annual income from Oregon in 2014 was $423.7 million. Nichols June 8, 2015 Decl. at ¶ 4. Total company income for that year was $32.1 billion. Id. It pays all Oregon business-related taxes, including fuel taxes, employment taxes, revenue taxes, and property taxes. Id. at ¶ 8.

## STANDARDS

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move for dismissal on the grounds that the court lacks personal jurisdiction. Plaintiff has the burden of showing personal jurisdiction. Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008).

> If the district court decides the motion without an evidentiary hearing, which is the case here, then the plaintiff need only make a prima facie showing of the jurisdictional facts. Absent an evidentiary hearing this court only inquires into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction. Uncontroverted allegations in the plaintiff's complaint must be taken as true. Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor.

Id. (citations, internal quotation marks, and brackets omitted).

In diversity cases, the court looks to the law of the state in which it sits to determine whether it has personal jurisdiction over the nonresident defendant. Western Helicopters, Inc. v. Rogerson Aircraft Corp., 715 F. Supp. 1486, 1489 (D. Or. 1989); see also Boschetto, 539 F.3d at 1015 ("When no federal statute governs personal jurisdiction, the district court applies the law of the forum state.").

3 - OPINION & ORDER

Oregon Rule of Civil Procedure (ORCP) 4 governs personal jurisdiction issues in Oregon. Because Oregon's long-arm statute confers jurisdiction to the extent permitted by due process, Ranza v. Nike, Inc., No. 13-35251, 2015 WL 4282986, at *4 (9th Cir. July 16, 2015) (citing Or. R. Civ. P 4L), I may proceed directly to the federal due process analysis. See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003) (when state long arm statute reaches as far as the Due Process Clause, court need only analyze whether the exercise of jurisdiction complies with due process); see also Millennium Enters., Inc. v. Millennium Music, LP, 33 F. Supp. 2d 907, 909 (D. Or. 1999) (because Oregon's catch-all jurisdictional rule confers personal jurisdiction coextensive with due process, the analysis collapses into a single framework and the court proceeds under federal due process standards).

To comport with due process, the nonresident defendant must "'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Ranza, 2015 WL 4282986, at *4 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." Id.

## DISCUSSION

### I. General Jurisdiction - Minimum Contacts

Plaintiff concedes there is no specific jurisdiction. For a corporation, general jurisdiction is fundamentally established by a defendant's principal place of business and place of incorporation. Daimler AG v. Bauman, 134 S. Ct. 746, 760 (2014). Here, Pilot's principal place of business is in Tennessee and it was organized under Delaware law.

When a corporation is neither incorporated in the forum nor has its principal place of business in the forum, the court must examine the defendant's contacts with the forum to determine if it has general jurisdiction.  As the Ninth Circuit recently explained in <u>Ranza</u>:

> Because the assertion of judicial authority over a defendant is much broader in the case of general jurisdiction than specific jurisdiction, a plaintiff invoking general jurisdiction must meet an "exacting standard" for the minimum contacts required.  <u>CollegeSource [Inc. v. AcademyOne, Inc.]</u>, 653 F.3d [1066,] 1074 [(9th Cir. 2011)].  "[G]eneral jurisdiction requires affiliations so continuous and systematic as to render the foreign corporation essentially at home in the forum State, <i>i.e.</i>, comparable to a domestic enterprise in that State."  <u>Daimler</u>, 134 S. Ct. at 758 n.11 (citations, internal quotation marks and alterations omitted).  Such contacts must be "constant and pervasive."  <u>Id.</u> at 751.  The paradigmatic locations where general jurisdiction is appropriate over a corporation are its place of incorporation and its principal place of business.  <u>See id.</u> at 760. "Only in an 'exceptional case' will general jurisdiction be available anywhere else."  <u>Martinez [v. Aero Caribbean]</u>, 764 F.3d [1062,] 1070 [(9th Cir. 2014)] (citing <u>Daimler</u>, 134 S.Ct. at 761 n.19).

<u>Ranza</u>, 2015 WL 4282986, at *4; <u>see also</u> <u>Martinez</u>, 764 F.3d at 1070 (referring to the "demanding nature of the standard for general personal jurisdiction over a corporation").

A corporation's "'continuous activity of some sort[]'" in the forum state is insufficient to subject the corporation to general jurisdiction.  <u>Daimler</u>, 134 S. Ct. at 757 (quoting <u>Int'l Shoe</u>, 325 U.S. at 318); <u>see also</u> <u>Martinez</u>, 764 F.3d at 1070 (noting that the "Court in <u>Daimler</u> rejected the plaintiffs' argument . . . that general jurisdiction is appropriate whenever a corporation engages in a substantial, continuous, and systematic course of business in a state) (internal quotation marks omitted).  Even "sizable sales" are insufficient to establish general jurisdiction.  <u>See</u> <u>Daimler</u>, 134 S. Ct. at 761-62 (determining California did not have general jurisdiction over a foreign corporation that had California-based facilities, was the largest supplier of luxury vehicles in California, and made over ten-percent of its new vehicle sales in the United States in

California).  Instead, general jurisdiction "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide."  Id. at 762 n.20.  "A corporation that operates in many places can scarcely be deemed at home in all of them."  Id.  "Otherwise, 'at home' would simply be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States."  Id.

Pilot's activity in Oregon, although continuous, does not render it "essentially at home" in Oregon.  I agree with Pilot that its contacts with Oregon, which are fewer and less than Daimler's contacts with California, do not give rise to general jurisdiction.  In 2014, Oregon provided only 1.32% of Defendant's total revenue and Oregon has never contributed to more than 2% of its total revenue.  In Daimler, 2.4% of Daimler's worldwide sales in California were insufficient.  Id. at 752.

Plaintiff notes there are some factual and procedural differences between Daimler and the instant case.  Most significantly, Daimler involved the contacts of the Defendant's subsidiary. Pilot, in contrast, participates directly in the Oregon economy and has a physical presence in Oregon.  But, the Court in Daimler attributed the subsidiary's contacts to the defendant and still concluded that the Ninth Circuit erred in determining that the defendant was at home in California.  Id. at 760 (even if the Court assumed subsidiary was "at home" in California and further assumed subsidiary's contacts were imputable to defendant, no basis to subject defendant to general jurisdiction in California), at 762 (error for Ninth Circuit to conclude defendant was at home in California even when subsidiary's contacts attributed to defendant).  Thus, this distinction is not material.  Plaintiff also stresses that Daimler concerned claims by foreign plaintiffs against a foreign defendant for injuries and actions that occurred exclusively in

Argentina.  Here, although Plaintiff resides in Oregon, the claims are brought against a foreign

defendant for injuries that occurred exclusively in Idaho.  This distinction is also not material.

See Brown v. CBS Corp., 19 F. Supp. 3d 390, 399 (D. Conn. 2014) (rejecting similar arguments

by a plaintiff attempting to distinguish Daimler).

Pilot cannot properly be deemed to be "at home" in Oregon when only ten out of its

approximately 550 travel centers in the United States and Canada are located in Oregon and

Oregon generates so little of its income.  While Pilot has some presence in Oregon, if general

jurisdiction were premised on these limited "contacts," Pilot would be subject to the jurisdiction

of almost every state in which it conducts some business.  Such "exorbitant exercises of

all-purpose jurisdiction" would stretch beyond the limits imposed by federal due process.

Daimler, 134 S. Ct. at 761-62.

II.  Consent

As an alternative to the general jurisdiction "minimum contacts" argument, Plaintiff

argues that Oregon has personal jurisdiction over Pilot based on Pilot's compliance with

Oregon's business regulation statutes.  Plaintiff contends that Pilot consented to personal

jurisdiction in Oregon by registering to do business here and by designating an agent for service

of process.  I reject Plaintiff's argument.

Oregon statutes governing foreign limited liability companies ("foreign LLCs") are found

at Oregon Revised Statutes §§ (O.R.S.) 63.701-63.747.  Pilot does not dispute that it has

complied with the various requirements in these statutes.

Essentially, Plaintiff contends that compliance with business registration statutes is an

independent method of establishing personal jurisdiction, divorced from any analysis under the

Due Process Clause.  Pilot contends that consent is not a separate basis for personal jurisdiction, and even if it is, it can no longer be recognized as such in the post-Daimler world.

The parties have identified no controlling post-Daimler Ninth Circuit cases on this issue. The parties have cited no other post-Daimler federal appellate decisions on this issue and I have found none.  There are conflicting post-Daimler opinions from a few federal district courts.

In two Delaware cases and one New Jersey case, the courts found personal jurisdiction by consent when the corporation complied with the state's business registration statute.  Otsuka Pharm. Co. v. Mylan, Inc., No. 14-4508 (JBS/KMW), 2015 WL 1305764, at **8-12 (D.N.J. Mar. 23, 2015) (holding that some of the defendants consented to personal jurisdiction in New Jersey by registering to do business there); Forest Labs, Inc. v. Amneal Pharm., LLC, No. 14-508-LPS, 2015 WL 880599, at **4-10 (D. Del. Feb. 26, 2015) (Magistrate Judge Burke concluding that compliance with state statute requiring appointment of agent for service of process was consent to personal jurisdiction), adopted by J. Stark, 2015 WL 1467321 (D. Del. Mar. 30, 2015); Acorda Therapeutics, Inc. v. Mylan Pharm., Inc., No. 14-935-LPS, 2015 WL 186833, at **7-14 (D. Del. Jan. 14, 2015) (District Judge Stark finding jurisdiction by consent when corporation complied with Delaware's business registration statute).

A different judge in the District of Delaware came to the opposition conclusion. AstraZeneca AB v. Mylan Pharm., LLC, 72 F. Supp. 3d 549, 555-56 (D. Del. Nov. 5, 2014) (rejecting argument that Supreme Court cases holding that personal jurisdiction is satisfied merely by complying with state business registration statutes remain viable and concluding that Daimler "weigh[s] on the issue"; further noting that both consent and minimum contacts are rooted in due process); see also Brown, 19 F. Supp. 3d at 394 (concluding that Connecticut

business registration and agent designation statute could confer personal jurisdiction on a registered foreign corporation for purposes of the state's long-arm statute, but due process requirements must still be met; under <u>Daimler</u>, no personal jurisdiction over defendant).

Before <u>Daimler</u>, circuit courts were split as to whether compliance with business registration or agent designation statutes subjected a defendant to personal jurisdiction. <u>See Forest Labs.</u>, 2015 WL 880599, at *9 (citing Third, Eighth, and First Circuits cases holding that even after <u>International Shoe</u>, compliance with registration statutes could amount to valid consent to personal jurisdiction; citing Eleventh, Seventh, and Fourth Circuit cases holding that compliance with a state registration statute cannot be the basis for finding consent to general jurisdiction); <u>see also</u> <u>Otsuka Pharm.</u>, 2015 WL 1305764, at *10 (similarly citing Third, Eighth, and First Circuit cases for the proposition that after <u>International Shoe</u>, "the majority of federal Courts of Appeals to have considered the question have concluded that compliance with registration statutes may constitute consent to personal jurisdiction").

The Ninth Circuit position is articulated in <u>King v. American Family Mutual Insurance Company</u>, 632 F.3d 570, 576 (9th Cir. 2011). In <u>King</u>, the defendant out-of-state insurance company appointed the state Commissioner of Insurance as its registered agent for service of process as part of an application to conduct business in Montana. <u>Id.</u> at 572, 573. While the insurance company contemplated doing business in Montana, it never completed the regulatory process for doing so. <u>Id.</u> It also had no contacts or contracts, no sales agents or producers, no employees, and no offices in Montana. <u>Id.</u> It was, as the court described, "99.99% Montana free." <u>Id.</u> at 572. Plaintiffs, Colorado residents, were in a motorcycle accident in Montana. They brought suit against their insurance company regarding an insurance policy issued by the

defendant to the plaintiffs in Colorado.  Id. at 572-73.

The district court dismissed the action for lack of personal jurisdiction.  Id. at 572.  The Ninth Circuit began its analysis of whether the defendant's "appointment of an agent for service of process is a sufficient hook for the exercise of personal jurisdiction" by reviewing "a line of venerable Supreme Court cases."  Id. at 573-76 (discussing Pa. Fire Ins. Co. of Phila. v. Gold Issue Mining & Milling Co., 243 U.S. 93 (1917), Chipman, Ltd. v. Thomas B. Jeffrey Co., 251 U.S. 373 (1920), Robert Mitchell Furniture Co. v. Selden Breck Constr. Co., 257 U.S. 213 (1921), Louisville & Nashville R.R. Co. v. Chatters, 279 U.S. 320 (1929), and Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952)).

In summarizing its discussion, the court stated that

> Pennsylvania Fire, Chipman, and Robert Mitchell thus collectively stand for the proposition that federal courts must, subject to federal constitutional restraints, look to state statutes and case law in order to determine whether a foreign corporation is subject to personal jurisdiction in a given case because the corporation has appointed an agent for service of process.

Id. at 576; see also id. at 574 (stating that Pennsylvania Fire "holds that the appointment of an agent for service of process will subject a foreign insurer to general personal jurisdiction *if* the governing state statute so provides"); at 575 (stating that Robert Mitchell "confirms that federal courts should look first and foremost to a state's construction of its own statute to determine whether appointment of an agent for service of process is a sufficient basis for the exercise of personal jurisdiction over a foreign corporation" and that Robert Mitchell "announces the default rule, that in the absence of broader statutory language or state court interpretations, the appointment of an agent for the service of process is, by itself, insufficient to subject foreign corporations to suits for business transacted elsewhere.").

Following this discussion, the court then analyzed the Montana statute. Id. at 577. The plain language of the statute did not resolve the question of whether the appointment of the Commissioner as the agent for service subjected the defendant to suit for business conducted elsewhere. Id. Next, the court looked at the interpretation of the statute by Montana courts. Id. at 577-78. Although the Supreme Court of Montana had not determined the effect of the identical statute on personal jurisdiction over foreign defendants, the King court cited a 1933 Montana case which had addressed an earlier, similar statute which required foreign corporations to "'maintain an agent within the state upon whom service of process may be made.'" Id. (quoting Reed v. Woodmen of the World, 94 Mont. 374, 22 P.2d 819 (1933)). The King court understood the Reed court to limit the jurisdictional reach of the agent-designation statute to foreign companies that actually transacted business in Montana. Id. (relying on language in Reed indicating that the object of "statutes of this nature" was to enforce "the contracts made here" by foreign corporations through its agents).

Following King, district courts within the Ninth Circuit have cited the case for the proposition that the court must look to state law to determine whether compliance with business registration or agent designation statutes confer general personal jurisdiction over a nonresident corporate defendant. E.g., Strickland v. BAE Sys. Tactical Vehicle Sys., LP, No. 4:13-cv-00148-BLW, 2013 WL 2554671, at *4 (D. Id. June 10, 2013) (citing King for statement that "[w]hether a foreign corporation subjects itself to the general jurisdiction of the courts within a state simply by appointing a registered agent to accept service of process within that state is a question of state law"); World Lebanese Cultural Union, Inc. v. World Lebanese Cultural Union of N.Y., Inc., No. C 11-01442 SBA, 2011 WL 5118525, at *4 (N.D. Cal. Oct. 28, 2011) (same); Corbo v.

<u>Laessig</u>, No. 2:10-CV-0316-GMN-LRL, 2011 WL 1327680, at *5 (D. Nev. Apr. 6, 2011) (citing

<u>King</u> for proposition that court must look to Nevada Supreme Court cases interpreting the statute

to determine if compliance with the statute constitutes consent to general personal jurisdiction).

Based on <u>King</u>, it appears that the Ninth Circuit aligns itself with those circuits

concluding, albeit pre-<u>Daimler</u>, that consent <u>may</u> be a separate basis for asserting general

personal jurisdiction of a foreign defendant, independent of an <u>International Shoe</u> minimum

contacts due process analysis.  If the Ninth Circuit outright rejected the notion that consent by

compliance with state business registration/agent designation statutes could subject a foreign

corporation to general personal jurisdiction, such as the Eleventh, Seventh, and Fourth Circuits

have held, the court would have likely proceeded directly to the minimum contacts analysis and

disposed of the personal jurisdiction issue on that basis.  Even so, it is clear that in the Ninth

Circuit, the mere fact that a foreign defendant has complied with business registration or agent

designation statutes is insufficient for the exercise of general personal jurisdiction over that

defendant for actions taken outside the forum state <u>unless</u> the statutes themselves or the state

court's interpretation of those statutes provides for that exercise.  Based on <u>King</u>, I turn to Oregon

law.

Plaintiff relies on five separate provisions of the statutes governing the authority of

foreign LLCs to transact business in Oregon.  Under O.R.S. 63.701(1), a foreign LLC "may not

transact business in this state until it has been authorized to do so by the Secretary of State."  A

separate statute instructs the foreign LLC as to the application required to transact business in

Oregon and provides that the application must include the name of the foreign LLC's "registered

agent at the registered office[.]" O.R.S. 63.707(1)(f).  Under another provision, each LLC

authorized to transact business in the state "must continuously maintain" in Oregon, a registered office and a registered agent. O.R.S. 63.721(1), (2) (the registered agent may be an individual, a domestic LLC, or a foreign LLC whose business office is identical to the registered office).

Under O.R.S. 63.704(1), a foreign LLC which transacts business in Oregon without authorization from the Secretary of State may not maintain a proceeding in any court in this state until it obtains such authorization. Finally, the statutes provide that the "registered agent appointed by a foreign limited liability company authorized to transact business in this state shall be its agent upon whom any process, notice or demand required or permitted by law to be served upon the foreign limited liability company may be served." O.R.S. 63.731.

These statutes do not explicitly address personal jurisdiction. Thus, they are similar to the Delaware statutes analyzed in Forest Laboratories. There, the business registration statute provided that all process issued out of any Delaware court and all orders made by any Delaware court may be on served the registered agent, designated in accordance with Delaware statute, of a foreign corporation qualified to do business in Delaware. 2015 WL 880599, at *10 (discussing 7 Del. C. § 376). The statutes further provided that a foreign corporation must pay the Secretary of State a fee and file with the Secretary a statement setting forth the name and address of its registered agent in Delaware. Id. (discussing 8 Del. C. § 371). The Forest Laboratories court concluded that neither of the statutes expressly set out the types of actions for which registration of an agent for service of process shall be effective. Id.; see also id. at *9 n.11 (noting that the Pennsylvania statute at issue in a Third Circuit case was "particularly explicit about the effect that compliance would have on the question of personal jurisdiction" because it provided that the corporation's qualification as a "foreign corporation under the laws of the State . . . shall

constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person") (internal quotation marks and brackets omitted).

Similarly, the statutes at issue in <u>King</u> also failed to expressly address jurisdiction. There, the Montana statutes provided only that as part of the application for an insurance company to conduct business in Montana, the company had to appoint the insurance commissioner as its attorney to receive service of legal process issued against it in Montana. <u>King</u>, 632 F.3d at 577. The company also had to file with the commissioner the name and address to which the commissioner should forward any summons or complaint received against the insurer. <u>Id.</u> The Ninth Circuit found that the plain language of the statutes did "not answer the question of whether the appointment subjects [defendant] to suit in Montana for business conducted elsewhere." <u>Id.</u> As in <u>Forest Laboratories</u> and <u>King</u>, because the Oregon statutes do not expressly address personal jurisdiction, I must look to Oregon cases interpreting Oregon statutes to determine the effect that compliance with those statutes has on general personal jurisdiction.

The parties cite no Oregon law interpreting the current statutes at issue, any current analogous statutes, or any predecessor statutes. Pilot represents that the "consent-by-registration" theory has not been adopted by the Oregon Supreme Court or the Oregon Court of Appeals but it engages in no discussion of the issue. My research has turned up no cases directly on point. In an 1897 case brought by an Oregon resident against a Kentucky corporation, the defendant argued that service upon its president in Oregon was insufficient. The Oregon Supreme Court considered a statute which provided, as characterized by the court, "that no foreign corporation shall be subject to the jurisdiction of the courts of the state in personam unless it appear in the

action or have an agency established here for the transaction of some portion of its business."

Farrel v. Or. Gold-Mining Co., 31 Or. 463, 466, 49 P. 876, 877 (1897) (citing Hill's Ann. Laws, § 516).  The court explained that the statute was

> only declaratory of the general rule that, in the absence of a voluntary appearance, the courts of one state have no jurisdiction over a corporation created in another, unless it is transacting some portion of its corporate business within the state where sued.  And as a corporation can act only through its agents, it necessarily follows that if it is doing business in the state it must have an agency established here, within the meaning of the statute.  In no other way can it do business, and hence the statute simply means that, in the absence of a voluntary appearance, no foreign corporation shall be subject to the jurisdiction of the courts of this state unless it is engaged in the transaction of some portion of its corporate business at the time the action is commenced[.]

Id. at 466-67, 49 P. at 877.

The court stated that a state may impose, as a condition upon which the foreign corporation shall do business within the state, that the corporation accept as sufficient whatever service of process upon the corporation's officers or agents as may be prescribed.  Id. at 468, 49 P. at 877.  Because that condition of service may be implied or express, the court explained that

> [w]hen therefore, a state provides by general law that process may be served upon a private corporation by serving the same upon certain officers or agents thereof, and a foreign corporation subsequently comes into the state to do business, it will be deemed to have consented to subject itself to the jurisdiction of the local courts by the service of process upon the officers or agents designated in the local statute.

Id. at 468, 49 P. at 878; see also id. at 467-68, 49 P. at 877 ("when a corporation migrates into another state, and engages in business there, it becomes, in effect, for jurisdictional purposes, a domestic corporation, and liable to suit upon a cause of action arising in the state of its adoption by service of process in the manner provided for the service of domestic corporations, unless the statute otherwise provides.").

Notably, Farrel, while indicating that a foreign corporation consents to the jurisdiction of Oregon courts when it does business here, concerned a claim involving conduct that occurred in Oregon. It does not stand for the proposition that Oregon's business registration statutes imply consent by a foreign corporation to the jurisdiction of Oregon courts for conduct occurring outside of Oregon. Furthermore, the focus is on the transaction of business in Oregon. It is by the transaction of business in the state, not the designation of an agent, that the foreign corporation subjects itself to jurisdiction, and thus service of process, in Oregon. Given the repeated references to the foreign corporation "coming" into the state to do business, Farrel foreshadows today's minimum contacts personal jurisdiction jurisprudence. It does not suggest that a foreign corporation's compliance with statutes requiring registration to do business in Oregon or the appointment of an agent in Oregon for service of process in Oregon is implied consent to jurisdiction in Oregon for conduct completely unrelated to Oregon.

A later Oregon Supreme Court case underscores that it is the transaction of business in the state that creates the consent to jurisdiction, regardless of whether the cause of action arises in or out of Oregon, and not the mere compliance with business registration or agent designation statutes. In Enco, Inc. v. F.C. Russell Co., 210 Or. 324, 311 P.2d 737 (1957), the defendant, an Ohio corporation with its principal place of business in Ohio, argued that it was not subject to jurisdiction in Oregon because it was not doing business in the state. In discussing the meaning of doing business in a state, the court noted that "[w]hether a corporation is 'doing business' in a state foreign to its birth involves, in the final analysis, a question of due process under the Constitution of the United States." Id. at 333, 311 P.2d at 741-42.

The court discussed some of its earlier cases on the issue of implied consent for

jurisdiction.  It noted that it had "adopted the implied consent theory for sustaining the jurisdiction of its state courts over suits brought therein against foreign corporations." Id., 311 P.2d at 742.  It explained that the implied consent theory "was based upon the fiction that a foreign corporation doing business in a state foreign to its birth consented to be found in that state." Id.  The court stated that its prior cases held that a foreign corporation doing business in Oregon is deemed a resident of Oregon such that it is amenable to service of process of the Oregon courts.  Id. at 334, 311 P.2d at 743 (citing Farrel, 31 Or. at 467, 468, and Aldrich v. Anchor Coal & Dev. Co., 24 Or. 32, 35, 32 P. 756 (1893)).  Quoting a 1917 case, the court made clear that "'these authorities [referring to Farrel and Aldrich] go no further than to hold that a corporation by transacting business in Oregon consents to be found therein for purpose of service of summons upon it.'" Id. (quoting Hamilton v. N. Pac. S.S. Co., 84 Or. 71, 77, 164 P. 579, 581 (1917)).

Although the defendant company in Enco had not complied with business-related statutes in Oregon and thus, the court there was not deciding the question of whether such compliance subjected the company to jurisdiction in Oregon, the court's discussion of its previous cases is useful.  As the court makes clear, its earlier cases of Aldrich, Farrel, and Hamilton hold that a foreign corporation impliedly consents to jurisdiction in Oregon by virtue of conducting business in Oregon, not because it appoints an agent for service of process or registers the business with the Secretary of State.  When this is understood, the analysis is best understood as indistinct from the minimum contacts analysis established by International Shoe.

In another case, the Oregon Supreme Court considered a statute which required out-of-state insurance companies to, effectively, appoint a person in the state as attorney-in-fact and

which then "'authorize[d] and empower[ed] such attorney to receive and accept service of all writs, processes and summons requisite or necessary to give complete jurisdiction of any such company or association to any of the courts of this state or the United States courts therein. . . .'" State ex rel. Kahn v. Tazwell, 125 Or. 528, 533, 266 P. 238, 240 (1928) (quoting Or. L. § 6327, § 3a, c. 203), overruled on different grounds, Reeves v. Chem. Indus. Co., 262 Or. 95, 495 P.2d 729 (1972). The court was not deciding the precise issue presented here. Instead, it was asked to address the relationship of the statute to the statute's title which the defendant argued limited the statute's application to causes of action arising within Oregon. Id. at 532, 266 P. at 240.

The court agreed with the plaintiff and held that the title did not limit the statute's reach, id. at 533-36, 266 P. at 240-41, and further, that "[w]here a foreign corporation is doing business in the state sufficient to render it subject to the jurisdiction of the courts of the state generally, jurisdiction of a particular suit does not fail because the cause of action sued on has no relation in its origin to such business." Id. at 541, 266 P. at 243. Thus, the fact that the claim against the insurance company defendant did not arise in Oregon was not a barrier to suit in Oregon when the defendant otherwise conducted business in Oregon[1] and was subject to a statute which expressly provided for jurisdiction over the defendant.

A case from this Court addressed a statute containing language almost identical to the statutory language examined in Tazwell. Traveler's Ins. Co. v. Cimarron Ins. Co., 196 F. Supp. 681 (D. Or. 1961). In Traveler's, the defendant argued that a service of process statute was limited to cases involving surplus line insurance. In pertinent part, the statute provided that

---

[1] According to a later Oregon case, the insurance company in Tazwell was conducting business in Oregon. State ex rel. Knapp v. Sloper, 256 Or. 299, 304, 473 P.2d 140 (1970).

before registering and delivering the insurance policy, the surplus line agent had to procure from the insurance company "'a power of attorney which empowers him as its attorney in fact to receive and accept on its behalf service of any and all writs, processes and summonses requisite or necessary to give complete jurisdiction of any such company or insurer to any courts of this state or of the United States in this state.'" Id. at 683 (quoting then O.R.S. 750.050(2)).

The court described the statutory language as "very broad and comprehensive." Id. It explained that "[o]bviously, the intention of the legislature was to require each surplus line insurance company to submit to the jurisdiction of the courts in Oregon on all types of actions and suits which might be instituted against it, whether by reason of the issuance of a policy or otherwise." Id. The court stated that a state, "as a condition to doing business within its boundaries, may by statute require a foreign corporation to submit to the jurisdiction of its court and the federal courts located therein and such legislation does not violate due process." Id. (citing Perkins, 324 U.S. 437). The court held that the "only rational construction" of the statutory language was that "it requires an insurance company doing business in Oregon to submit to the jurisdiction of the local and federal courts for all purposes." Id. at 684.

As mentioned above, Oregon cases do not address the statutes at issue here. And, Oregon cases have not held in regard to analogous or predecessor statutes that compliance with such statutes implies consent to general personal jurisdiction by a foreign defendant concerning an action arising outside of Oregon. The cases indicate that Oregon has focused on the foreign corporation's conduct of business in the state as an implied consent to jurisdiction. They also show that the Oregon Legislature can explicitly address jurisdiction in its statutes if it desires to do so. Given the lack of such language in the statutes at issue here, cases interpreting statutes

which expressly addresses jurisdiction are distinguishable.

Assuming that the Ninth Circuit in <u>King</u> recognizes that consent to general personal jurisdiction may be obtained (completely independent of the minimum contacts due process analysis), by complying with a state's business registration and agent designation statutes, the statutes at issue in this case do not provide a sufficient basis for jurisdiction over Pilot. Additionally, as in <u>King</u>, to "the extent that [the relevant state cases are] not dispositive, the default rule in <u>Robert Mitchell</u> applies - 'we should not construe the state statute to extend to suits in respect of business transacted by the foreign corporation outside [the state].'" <u>King</u>, 632 F.3d at 577 (quoting <u>Robert Mitchell</u>, 257 U.S. at 216) (brackets omitted). Thus, because <u>King</u> instructs that consent by compliance with business regulation statutes is an issue of state law, and nothing in Oregon law supports a conclusion that compliance with these statutes confers general personal jurisdiction over a nonresident defendant for conduct occurring outside Oregon, I reject Plaintiff's argument.

Finally, Plaintiff seizes on a particular passage from <u>King</u> to argue that Pilot's transaction of business in Oregon combined with its compliance with statutes governing foreign LLC conduct in Oregon, is sufficient for the exercise of jurisdiction over Pilot in Oregon. Pl.'s Mem. at 13 (arguing that "given Pilot's extensive business affiliations with the State of Oregon coupled with its long-standing compliance with Oregon's business registration statutes, Pilot has waived its right to object to jurisdiction"). I disagree.

In <u>King</u>, the court concluded its discussion of Montana law by stating that "Montana law regarding appointment of an agent for service of process does not, <u>standing alone</u>, subject foreign corporations to jurisdiction in Montana, at least when the corporations transact no business in the

state." <u>King</u>, 632 F.3d at 578 (emphasis added); <u>see</u> <u>also</u> <u>id.</u> at 575 (noting that <u>Robert Mitchell</u> "announces the default rule that in the absence of broader statutory language or state court interpretations, the appointment of an agent for the service of process is, <u>by itself</u>, insufficient to subject foreign corporations to suits for business transacted elsewhere.") (emphasis added).

Plaintiff suggests that as an alternative to general jurisdiction under <u>Daimler</u>'s strict standards, a foreign defendant which transacts business in the state consents to jurisdiction by complying with state business statutes. In other words, even if compliance alone were insufficient, the language in <u>King</u> indicates, according to Plaintiff, that compliance plus transacting business in the state will support the exercise of general jurisdiction over a foreign defendant.

As I read <u>King</u>, however, the references to "standing alone" and "by itself" are meant to convey only that compliance with business registration statutes does not alone or itself confer personal jurisdiction absent language in the statutes themselves, or a state court's interpretation of those statutes, establishing that the statutes provide for the exercise of jurisdiction. As explained above, Oregon statutes do not contain such language and have not been interpreted as such by the Oregon Supreme Court. <u>King</u> does not, in my opinion, suggest that the transaction of business by the foreign defendant is a component of the "consent by compliance" analysis. Given that Pilot's contacts do not establish general jurisdiction under the currently controlling analysis set forth in <u>Daimler</u>, they are not properly used to augment Plaintiff's consent-to-jurisdiction argument.

In the end, given my conclusion, I need not address Pilot's argument that consent to jurisdiction, as an independent basis of personal jurisdiction, does not survive <u>Daimler</u>. In this

case, even if it does exist independently, the requirements for consent by compliance are not met under Ninth Circuit and Oregon law.

CONCLUSION

Pilot's motion to dismiss [13] is granted.

IT IS SO ORDERED.

Dated this ___2___ day of ___September___, 2015

_____
Marco A. Hernandez
United States District Judge